# Supreme Court of Florida

―――――

No. SC2024-0380

―――――

**COREY B. JOHNSON,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

July 16, 2026

FRANCIS, J.

Does a trial court violate a juvenile's Eighth Amendment right against cruel and unusual punishment when it sentences him to two concurrent life terms for attempted murder, to run consecutively to a life sentence for murder?

The Fourth District Court of Appeal said no in *Johnson v. State*, 384 So. 3d 213 (Fla. 4th DCA 2024), certifying conflict between its decision and that of the Second District Court of Appeal in *Mack v. State*, 313 So. 3d 694 (Fla. 2d DCA 2020), which reached

the opposite conclusion.[1]

We find no violation of the Eighth Amendment to the U.S. Constitution.  We approve the result in *Johnson,* disapprove the reasoning in *Mack,* and uphold the sentences at issue in this case.

**I.**

In 2017, then seventeen-year-old Corey B. Johnson converted to Islam and began planning a "Qital" (meaning "war")[2] with the intention to kill someone.  On the day of his planned attack in March 2018, Johnson purchased a six-inch utility knife from Publix.  He then attended a birthday dinner with his best friend Kyle, Kyle's mother, Kyle's brother, and Jovanni, Kyle's brother's friend.  After dinner, Johnson and Jovanni joined Kyle and his family at their home for a sleepover.

Once everyone was asleep, Johnson began his attack, starting with Jovanni whom he thought easiest to kill given where he was sleeping.  Jovanni's screaming woke up Kyle's mother, who ran in

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

2.  "A litany of digital media later extracted from the defendant's phone included videos of beheadings, other acts of torture, and general ISIS propaganda."  *Johnson,* 384 So. 3d at 215 n.1.

and saw Johnson standing over Jovanni's body holding a knife, covered in blood. She tried grabbing the knife from Johnson, but he stabbed her in the neck and chest, cut both of her wrists, and sliced her Achilles tendon. He also lacerated her forehead, chin, neck, chest, left wrist, and right elbow.

The ongoing attack woke up Kyle's brother, whom Johnson stabbed thirty times to prevent him from calling the police. Johnson finally entered Kyle's bedroom and explained he had killed Jovanni and Kyle's brother but assured Kyle that he would not hurt him because of their friendship.

Kyle's mother, in the meantime, was able to escape next door, and a neighbor called 911. Kyle's brother also escaped, but Jovanni succumbed to his injuries and died before police arrived. Once on the scene, police officers watched Johnson enter a closet holding a knife. Eventually, a SWAT team used tear gas to force him out and he surrendered while repeating "Allah" and "Akbar."[3]

The State charged Johnson with one count of first-degree

---

3. As opposed to the correct phraseology, "Allahu Akbar," which is Arabic for "[G]od is most great." *Johnson*, 384 So. 3d at 215 n.2.

murder (count 1) and two counts of attempted first-degree murder (counts 2 & 3). The jury found him guilty of all charges. *Johnson*, 384 So. 3d at 215.

Because he was seventeen when he committed these crimes, Johnson was sentenced as a juvenile. Florida forbids *mandatory* life-without-parole (LWOP) sentences for juvenile homicide offenders. §§ 775.082(1)(b)1., 782.04, Fla. Stat. (2017). So, the trial court conducted a separate hearing to determine the appropriateness of imposing LWOP and to consider all the statutory mitigating factors. *See* § 921.1401(1), (2), Fla. Stat. (2017). Thereafter, the trial court sentenced Johnson to LWOP for each count, ordering his two life sentences for attempted first-degree murder to run concurrently with each other, but consecutively to his life sentence for first-degree murder. *Johnson*, 384 So. 3d at 216. And consistent with section 775.082(1)(b)3., Florida Statutes, the court orally announced that Johnson would be eligible for judicial review after serving 25 years on count 1, and again after serving 25 years on his consecutive life sentences for counts 2 and 3. *Id.*

Johnson challenged this sentencing structure through a

Florida Rule of Criminal Procedure 3.800(b)(1) motion pending direct appeal, arguing in part that his consecutive LWOP sentences violated the Eighth Amendment under *Graham v. Florida,* 560 U.S. 48 (2010), because they precluded his early release based on demonstrated maturity and rehabilitation. The trial court denied that portion of the motion, and Johnson appealed the decision to the Fourth District.

On direct appeal, Johnson contended that his consecutive life sentences violated the Eighth Amendment because they precluded his release from incarceration after his first twenty-five-year judicial review. *Johnson,* 384 So. 3d at 216. The State countered that the consecutive sentences are constitutional because Johnson received individualized sentencing proceedings and will receive judicial review for each life sentence. *Id.*

The Fourth District agreed with the State, holding that "a defendant sentenced to [LWOP] for one homicide offense, consecutively followed by two concurrent [LWOP] sentences for related nonhomicide offenses, is constitutional because the defendant has an opportunity for 'meaningful review.' " *Id.* The Fourth District explained that the prohibition in *Graham* was "not

- 5 -

against the life sentence itself, but rather against 'making the judgment at the outset that those offenders never will be fit to reenter society' for committing a nonhomicide offense." *Id.* at 218 (quoting *Graham*, 560 U.S. at 75). In this context, "[t]he Constitution requires 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' and [that] the sentence serve a penological purpose." *Id.* (quoting *Graham*, 560 U.S. at 75).

The Fourth District concluded that Johnson will have "[a] meaningful opportunity to obtain release based on his demonstrated maturity and rehabilitation" because he "will have a meaningful review of his first life sentence after [25] years and a second meaningful review of his consecutive life sentences [25] years later." *Id.* at 218-19. Since Johnson "could . . . be released after [serving] fifty years," the Fourth District concluded that "[h]is sentence d[id] not violate the Eighth Amendment." *Id.* at 219.

In so ruling, the Fourth District certified that its decision directly conflicts with the Second District's decision in *Mack*.

In *Mack*, a juvenile offender was convicted in 1980 of first-degree murder, burglary with an assault, and sexual battery, all

committed within the same criminal episode. 313 So. 3d at 695. The trial court sentenced Mack to concurrent life sentences on the murder and burglary convictions, and to a consecutive life sentence on the sexual battery conviction. *Id.*

Thirty-six years later, Mack filed a rule 3.800(a) motion alleging his sentences violated the Eighth Amendment as interpreted by the Supreme Court in *Graham* and *Miller v. Alabama,* 567 U.S. 460 (2012). *Mack,* 313 So. 3d at 695. The postconviction court granted the motion but, following a new sentencing hearing under section 921.1401, reimposed the same sentences for Mack's convictions. *Id.* Based on this resentencing, under sections 921.1402(2)(a) and 775.082(1)(b), Mack was entitled to sentencing review after serving 25 years of his murder sentence. *Id.* Further, under sections 775.082(3)(c) and 921.1402(2)(d), he was entitled to review after serving 20 years of his burglary and sexual battery sentences, respectively. *Id.* And if he wasn't resentenced as to convictions in his initial review proceedings, he was entitled to review ten years thereafter. *Id.*

Mack appealed the new sentencing order and also filed a rule 3.800(b) motion to correct the sentence. *Id.* Specifically, he

contended that the sentencing scheme precluded his release based on demonstrated maturity and rehabilitation in any review of his murder and burglary sentences, because even if he were found entitled to release from incarceration from those sentences, he had to first begin serving his consecutive life sentence for the sexual battery. *Id.* at 695-96. Review of that sentence wouldn't occur for another 20 years. *Id.* at 696.

Mack further argued that it was a violation of the Eighth Amendment to have consecutive life sentences imposed for the sexual battery offense that was committed in the same episode as the other two crimes. *Id.*

The Second District agreed for two reasons. First, based on this Court's plurality opinion in *Purdy v. State*, 252 So. 3d 723 (Fla. 2018), "when conducting the first review of Mack's murder and burglary sentences a court would have no statutory authority to consider all three of his sentences in the aggregate." *Mack*, 313 So. 3d at 696 (citing *Purdy*, 252 So. 3d at 728-29). Thus, as to the consecutive sentence for sexual battery, the Second District reasoned that the mandated opportunity for release in another 20 years would be wholly illusory. *Id.* At best, even if a reviewing

- 8 -

court modified his life sentences for murder and burglary so they were immediately completed, the Second District reasoned that the consecutive life sentence for sexual battery would render Mack ineligible to seek release from incarceration for another two decades. *Id.* Consequently, review of the murder and burglary sentences could not satisfy *Graham*'s requirement that Mack be afforded a meaningful opportunity to obtain release by demonstrating his maturity and rehabilitation. *Id.*

Second, citing Justice Pariente's dissent in *Purdy*, that "a 'sentence lacking any legitimate penological justification is by its nature disproportionate to the offense,' " the Second District reasoned that Mack's consecutive life sentence for an offense arising from the same criminal episode as the others advanced no penological purpose. *Id.* (quoting *Purdy*, 252 So. 3d at 731 (Pariente, J., dissenting) (internal citations omitted)).

As a practical matter, the Second District reasoned, "its only effect [was] to eliminate any meaningful opportunity for [Mack] to gain release from incarceration under the murder and burglary sentences." *Id.* So, the consecutive life sentence for the sexual battery conviction violated the Eighth Amendment. *Id.* Based on

those conclusions, the Second District "reverse[d] the sentence on the sexual battery conviction and remand[ed] to the [sentencing] court with instructions to reimpose it to run concurrently with the sentences on the other two offenses." *Id.*

## II.

For the reasons explained below, we hold that the structure of Johnson's consecutive life sentences does not violate the Eighth Amendment because, as a juvenile *homicide* offender, Johnson is **<u>not</u>** constitutionally entitled to a meaningful opportunity for release for his nonhomicide offenses under *Graham*; rather, Johnson's individualized sentencing only had to be consistent with *Miller* and *Jones v. Mississippi*, 593 U.S. 98 (2021). And because it was, we approve the result in *Johnson* and disapprove the reasoning in *Mack*.

## A.

Florida construes the State's prohibition against cruel and unusual punishment in conformity with decisions of the United States Supreme Court. Art. I, § 17, Fla. Const. Because "the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual

- 10 -

punishment in Florida," *Barwick v. State*, 361 So. 3d 785, 794 (Fla. 2023), a discussion of the Supreme Court's Eighth Amendment jurisprudence is necessary.

Here, the relevant cases from the United States Supreme Court are *Graham*, *Miller*, and *Jones*.

In *Graham*, the United States Supreme Court held that the Eighth Amendment categorically forbids a sentence of LWOP for juvenile *nonhomicide* offenders. 560 U.S. at 74 ("This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole."). Instead, the *Graham* Court explained that "a juvenile *nonhomicide* offender must be given 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' before the end of that offender's sentence and during the offender's natural life." *Id.* at 75.

Just two years later, the United States Supreme Court expanded *Graham*'s reach in *Miller*, by holding that the Eighth Amendment also prohibits *mandatory* LWOP sentences for juvenile *homicide* offenders. 567 U.S. at 479 ("We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life

- 11 -

in prison without possibility of parole for juvenile offenders." (citing *Graham*, 560 U.S. at 75)).

While *mandatory* LWOP sentences for juvenile homicide offenders are no longer constitutionally permissible, *Miller* left intact *discretionary* LWOP sentences as long as the "sentencer follow[s] a certain process—considering an offender's youth and attendant characteristics—before imposing" an LWOP sentence. *Id.* at 483.

Emphasizing that *discretionary* rather than *mandatory* sentencing schemes was the point in *Miller*, in *Jones*, the United States Supreme Court rejected the argument that "*Miller* requires more than just a discretionary sentencing procedure." *Id.* at 106. Rather, explained the Court, "[u]nder *Miller* . . . , an individual who commits a homicide when he or she is under 18 may be sentenced to life without parole . . . if the sentence is not mandatory and the sentencer therefore has discretion to impose a lesser punishment." *Id.* at 100. The Court reiterated that "*Miller* mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing' a life-without-parole sentence." *Id.* at 106 (quoting *Miller*, 567 U.S. at 483).

In response to *Graham* and *Miller*, the Florida Legislature

created procedures for evaluating whether a juvenile could be sentenced to LWOP, and a review process for juveniles to demonstrate their rehabilitation and fitness for release. *See* ch. 2014-220, §§ 2-3, Laws of Fla. (creating §§ 921.1401-.1402, Fla. Stat.).

**B.**

Despite Johnson's claim to the contrary, his sentences do not violate the Eighth Amendment. To be sure, Johnson argues that his "consecutive life sentences for offenses he committed in a single criminal episode violate the Eighth Amendment because they preclude his release from prison based on demonstrated maturity and rehabilitation in any review of his murder sentence." But by its express terms, *Graham* does not apply to his case. *See* 560 U.S. at 63 ("Juvenile offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than juvenile offenders who committed no homicide. . . . The instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense."); *see also Miller*, 567 U.S. at 473 ("*Graham*'s flat ban on [LWOP] applied only to *nonhomicide* crimes, and the Court took care to distinguish those

- 13 -

offenses from murder, based on both moral culpability and consequential harm." (emphasis added) (citation omitted)). That lands Johnson's case squarely in the *Miller* and *Jones* category.[4,5]

As a juvenile *homicide* offender, Johnson is entitled *only* to the

4. *See also Veal v. State*, 810 S.E.2d 127, 129 (Ga. 2018) (supporting this reading of *Graham* and *Miller*, whereby the Georgia Supreme Court rejected a defendant's claim that consecutive life sentences for nonhomicide offenses—in conjunction with a life sentence for a homicide offense—resulted in an "unconstitutional aggregate sentence" in violation of *Graham*); *accord Arredondo v. State*, 406 S.W.3d 300, 306 (Tex. App. 2013) ("In sum, *Graham* prevented the imposition of life without parole for juvenile offenders convicted of nonhomicide offenses. *Miller* prevented the *mandatory* imposition of life without parole for juvenile offenders but specifically allowed a *discretionary* sentence of life without parole when the circumstances justify it. Therefore, even assuming for purposes of argument that two consecutive life sentences amount to a sentence of 'life without parole,' we conclude nothing prevents such a discretionary sentence when, as here, appellant has been found guilty of both a homicide offense and nonhomicide offenses in a particularly heinous crime."). *But see Budder v. Addison*, 851 F.3d 1047, 1059 (10th Cir. 2017) (applying *Graham* to vacate a defendant's three consecutive life sentences for nonhomicide offenses where he would have been required to serve 131.75 years in prison before being eligible for parole because he was a "juvenile" and "did not commit homicide").

5. Johnson also argues that the Fourth District was incorrect for concluding that his judicial review after serving at least fifty years in prison constitutes a meaningful opportunity to obtain release based on his demonstrated maturity and rehabilitation. At this stage of review, we need not address this argument because we hold that Johnson, as a juvenile *homicide* offender, is not entitled to a meaningful opportunity for release under *Graham* at all.

constitutional protections afforded under those cases whereby the sentencing court must consider the "offender's youth and attendant characteristics." *Miller*, 567 U.S. at 483. That's exactly what happened here when prior to exercising its discretion to sentence Johnson to LWOP, the trial court held a separate sentencing hearing and considered "each and every factor" required by section 921.1401(2), including Johnson's "youth and attendant circumstances," "the effect of immaturity or the failure to appreciate the risk and consequences," and the "possibility of rehabilitating the defendant." *See* § 921.1401(1)-(2)(e), (j), Fla. Stat. (providing that a sentencing court may "conduct a separate sentencing hearing" to determine "whether life imprisonment" is "an appropriate sentence").

Thus, Johnson was afforded all the protections to which he was entitled under *Miller* and *Jones*. The structure of his consecutive sentences, therefore, comport with constitutional requirements.

## III.

In sum, we hold that *Graham*'s opportunity-for-meaningful-review requirement does not apply to juveniles who commit

- 15 -

homicide offenses.[6]  Instead, *Miller* and *Jones* control.  And because the trial court here complied with those precedents by utilizing section 921.1401's discretionary, individualized process, Johnson's resulting sentences do not run afoul of the Eighth Amendment. Accordingly, we approve the result reached by the Fourth District in *Johnson*, and disapprove the reasoning in *Mack*.

It is so ordered.

COURIEL, C.J., and LABARGA, MUÑIZ, GROSSHANS, and SASSO, JJ., concur.
TANENBAUM, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal
    Constitutional Construction & Direct Conflict of Decisions

    Fourth District - Case No. 4D2022-0876

    (Palm Beach County)

Daniel Eisinger, Public Defender, and Benjamin Eisenberg, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm

---

6.  Since the Fourth District decided *Johnson*, the First District Court of Appeal has also ruled that a life sentence for a homicide offense, followed by consecutive sentences for nonhomicide offenses, does not violate the Eighth Amendment because "*Graham*'s 'meaningful opportunity for release' parameter does not apply to juvenile offenders who commit homicide offenses." *Bonifay v. State*, 413 So. 3d 892, 896 (Fla. 1st DCA 2025).  We also agree with *Bonifay*'s reasoning.

Beach, Florida,

for Petitioner

James Uthmeier, Attorney General, David M.S. Dewhirst, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, Nathan A. Forrester, Chief Deputy Solicitor General, and Allen L. Huang, Deputy Solicitor General, Tallahassee, Florida,

for Respondent